HELENA B. SCHMITT, Appellee, *vs.* O. E. WEBER,
Appellant.

*Opinion filed April 23, 1909.*

1. EQUITY—*decree not warranted by allegations of bill cannot
be sustained.* In the absence of any amendment of the bill, a de-
cree setting aside a sheriff's deed upon the ground that the tran-
script upon which the execution was issued was defective cannot
be sustained, where the bill made no charge that the transcript was
defective but charged that the entire proceeding was a fraudulent
conspiracy, which the decree finds was not established by the proof.

2. JUDICIAL SALES—*a transcript must recite facts showing au-
thority of clerk to issue executions.* Authority of clerk of the cir-
cuit court to issue an execution upon a transcript of proceedings
before a justice of the peace depends upon the transcript reciting
facts giving him such authority, and defects or irregularities in the
transcript cannot be cured after the execution has been issued, real
estate levied upon and sold, the time for redemption expired and a
deed executed to the purchaser.

APPEAL from the Superior Court of Cook county; the
Hon. W. M. McEWEN, Judge, presiding.

Appellee filed a bill in the superior court of Cook county
against appellant and others praying to have set aside and
annulled two sheriff's deeds to appellant, Weber, for two
pieces of real estate alleged to be owned by appellee.

The bill alleged that on March 25, 1905, and from thence
hitherto, complainant owned in fee simple lot 54 in Pick's
subdivision of the east half of block 18 of the canal trus-
tees' subdivision of the east half of section 29, township 40,
north, range 14, east, in the city of Chicago, improved with
a two-story flat-building, otherwise known as 1339 Mon-
tana street; also lot 21, block 6, in Ashland addition to
Ravenswood, section 17, etc., improved with a two-story
flat-building, otherwise known as 2364 North Ashland ave-
nue, city of Chicago; that on said March 25, 1905, the
Montana street property was worth $3500 and the Ashland
avenue property $12,000; that the Montana street property

was on said date and at the time of filing the bill occupied
by complainant and her family as a homestead. The bill
alleges that defendants, on or about March 20, 1905, en-
tered into a fraudulent conspiracy to deprive complainant
of and themselves acquire the title to said premises by the
use of legal process; that in pursuance of said conspiracy,
on March 20, 1905, the defendant Bernhard W. Wiedinger
caused a summons to be issued by John M. Stevens, a jus-
tice of the peace in and for Cook county, against complain-
ant, commanding her to answer the pretended complaint of
defendants Knut Semdsten and said Wiedinger, doing busi-
ness as Knut Semdsten & Co., for a failure to pay them a
certain demand not exceeding $200; that the summons was
delivered to John E. Gay, a supposed constable, and was
returned as served by him by reading to the complainant
March 25, 1905. The bill denies that the summons was
read to complainant or that she ever had any knowledge
or information of the alleged suit until December 4, 1906,
and avers that complainant never appeared to answer to
said suit, but that on April 7, 1905, a purported judgment
was entered against her for $177.50. The bill alleges that
complainant never, at any time, had any business relations
or dealings of any kind, nature or description with said
Semdsten and Wiedinger, or either of them, as a co-part-
nership or otherwise, and that she was not indebted to them
on any account or in any sum whatever. The bill alleges
that complainant believes said Semdsten is a fictitious per-
son, and that said Wiedinger made use of said pretended
partnership name, in pursuance of said conspiracy, in order
to bring two suits before said justice of the peace, as there-
inafter set forth. The bill further alleges that on June 30,
1905, the said Wiedinger, in pursuance of said fraudulent
scheme, caused a pretended execution on said judgment to
be issued by said justice of the peace and delivered to said
John E. Gay, a pretended constable; that said Gay endorsed
said writ received June 30, 1905, and also that he had made

a demand upon and left a copy of said writ and notice to schedule within ten days with complainant on said June 30, and afterwards returned said writ with the endorsement that complainant had no personal property in the county whereof he could cause to be made the judgment and costs mentioned in the execution or any portion thereof, and the writ was returned no part satisfied. The bill alleges that the execution was never served upon complainant by anyone, and that the judgment, and all proceedings thereon, were a part and parcel of the fraudulent scheme to defraud complainant of her property and were void and of no effect. The bill further alleges that upon June 30, 1905, said justice of the peace, Stevens, issued a transcript of said pretended judgment; that the same was filed in the office of the clerk of the circuit court of Cook county on the same day, and on July 1, 1905, a pretended execution was issued by the clerk of the circuit court of Cook county to the sheriff of said county, and on July 11, 1905, it was by said sheriff levied upon the Montana street property; that on August 5, 1905, a pretended sale was made, under said pretended execution, by the sheriff, of said property to defendant Weber and a pretended certificate of sale issued to him therefor, and on November 16, 1906, a sheriff's deed was issued for said property to said Weber and filed for record in the recorder's office of Cook county. The bill alleges that said sheriff's deed, and the proceedings upon which it was based, were and are a fraud upon complainant's rights; that the amount the property sold for was grossly inadequate; that it was worth $3500 and was sold for $206.19, and that the proceedings before the justice of the peace were and are void for the want of jurisdiction of the person of the complainant. The bill further alleges that the defendant Wiedinger, in pursuance of said conspiracy, caused another summons to be issued by said justice of the peace against complainant and John J. Schmitt on March 20, 1905, commanding them to answer the pretended com-

plaint of said Wiedinger for a failure to pay him a certain demand, not exceeding $200. The bill makes the same allegations with reference to the manner of obtaining judgment, execution, transcript, sale and sheriff's deed as it made with reference to the judgment first mentioned, except in this case the judgment was in favor of Wiedinger alone, and the property sold by the sheriff and purchased by Weber was the Ashland avenue property, which the bill alleges was worth $12,000 and was sold to Weber for $203.39. The bill further alleges that in the prosecution of the conspiracy to deprive complainant of her property Weber acted as a mere tool and figurehead for Wiedinger; that the premises were purchased by Wiedinger in the name of Weber, but that Weber never paid any money or other valuable thing on account of said purchases and that he had due and full notice of all of the complainant's rights; that no appraisers were ever appointed by the sheriff to allot and set off the complainant's homestead; that Weber, pretending to be the owner of said premises, has notified complainant and the occupants to pay rent to him for the use of said premises, and the bill charges, upon information and belief, that the sheriff did not advertise the premises for sale as required by law; that they were misdescribed, and the names of the parties to the suits set forth in the advertisement of sale did not follow the pretended writ. The bill further charged that the sheriff's deed for the Ashland avenue property did not follow the process upon which it purported to be based; that the justice's transcript recited a judgment in favor of Knut Semdsten and Barnard M. Wiedinger, doing business as Knut Semdsten & Co., and the execution issued upon said transcript was in favor of Knut Semdsten and Bernard M. Wiedinger and the sheriff's deed recited a sale upon a judgment in favor of Knut Sundsen and Bernard M. Wiedinger. The bill prayed that defendants be required to answer without oath, and that Weber be enjoined from interfering with the occupants of the premises, and from

selling, conveying or encumbering the same and from instituting any legal proceedings to obtain possession thereof; that the sheriff's deeds be set aside and declared null and void as clouds upon complainant's title, and that Wiedinger and Semdsten be perpetually enjoined from asserting any claim or demand upon or issuing any execution or other process on said justice's transcripts.

Weber filed a separate answer to the bill and Wiedinger and Sundsten filed a joint and several answer. The answer of Wiedinger and Sundsten averred that their true and correct names, respectively, were Bernard M. Wiedinger and Knut Sundsten; that at the time the judgments mentioned in the bill were rendered they were partners in the real estate business in the city of Chicago under the firm name of Knut Sundsten & Co., and that the judgment first above mentioned in complainant's bill was for an indebtedness due said partnership and the second one was for an indebtedness due Wiedinger alone. They denied any fraudulent conspiracy, as charged in the bill, to obtain title to the complainant's land, and denied that they ever entered into any conspiracy with Weber for that purpose. They also denied that they, or either of them, have, or ever did have, any interest in said premises, and aver that from the sales of said premises made under the executions a sufficient sum, was realized and paid to respondents to satisfy in full the amount of their judgments and costs.

Weber in his answer denies all the allegations in complainant's bill of fraud and conspiracy and alleges that both judgments were *bona fide;* that the complainant was served with summons by the constable in both cases, according to law; that she was served with executions issued on both judgments by the constable and also by the sheriff with the executions issued upon the transcripts, and was notified to schedule by both said officers; that she had full knowledge of all the proceedings and received numerous letters about the claims before suits were started in the justice's court

and afterwards; that she had also been personally called upon by the parties and their agents and requested to pay the said claims. The answer denies any conspiracy between the respondent and the other defendants, or either of them; denies that respondent acted as a tool and figurehead for Wiedinger, and avers that he knew nothing about the proceedings before the justice of the peace at the time he purchased at the sheriff's sales; that he purchased at said sales after he had examined the property; that he was the highest and best bidder at the said sales and that he paid the amount of his bids to the sheriff; that he is the owner of said premises and not the pretended owner. Respondent disclaims any knowledge of the Montana street property being a homestead and asks that strict proof of that fact be required. The answer further avers that the transcripts were issued by the justice of the peace and filed in the office of the clerk of the circuit court; that the executions upon which the sales were made were issued and that there was nothing fraudulent about the acts of the justice, constable or the sheriff, and denies that there was anything fraudulent or wrongful in connection with the sheriff's sales of the property to respondent.

After replications filed, the cause was heard by the chancellor upon oral and documentary evidence and taken under advisement. Subsequently a decree was entered setting aside the sheriff's deeds as invalid and as clouds upon complainant's title. This appeal is prosecuted from that decree.

HARRIS F. WILLIAMS, (ELDON M. VOTAW, of counsel,) for appellant:

The allegations of the bill, the proof and the decree must correspond. The decree cannot give relief, even if the facts disclosed by the evidence would warrant it, where there are no averments in the bill to which the evidence can apply. If the evidence disproves the case made by the bill, the complainant cannot recover on other grounds unless the court

permits the complainant to amend and state a case which supports and meets the evidence, which was not done here. *Dorn* v. *Geuder*, 171 Ill. 362; *Bremer* v. *Dock Co.* 123 id. 104; *Russell* v. *Conners*, 140 id. 660; *Morgan* v. *Smith*, 11 id. 194; 16 Cyc. 483; *McKay* v. *Bissett*, 5 Gilm. 499.

ERNEST SAUNDERS, and GEORGE A. SCHMITT, for appellee:

The theory of complainant's bill was, that her property was sold for an inadequate price and that the proceedings were so irregular as to amount to a fraud. It was not necessary to allege every specific irregularity. *Hobson* v. *McCambridge*, 130 Ill. 367; *Dutcher* v. *Leake*, 44 id. 398; *Smith* v. *Huntoon*, 134 id. 24.

The purchaser at a sheriff's sale is required to show a valid judgment and execution, and is chargeable with notice of the character and contents of the judgment and execution under which he claims, and discrepancies between them, if any exist. *Statsenberg* v. *Statsenberg*, 75 Ind. 538.

The failure to set off the homestead was an irregularity. *Bach* v. *May*, 163 Ill. 547; *Leopold* v. *Krause*, 95 id. 440.

The inadequacy of price, alone, was not ground for setting aside the sale, but when coupled with irregularities was sufficient. *Dickerman* v. *Burgess*, 20 Ill. 267; *Hobson* v. *McCambridge*, 130 id. 367; *Smith* v. *Huntoon*, 134 id. 24; *Misener* v. *Glasbrenner*, 221 id. 384; *Miller* v. *McAllister*, 197 id. 72.

The jumble of names of the parties to the proceeding was an irregularity. There must be uniformity in the judgment execution and sheriff's deed thereunder. *Harmon* v. *Larned*, 58 Ill. 67; *Hobson* v. *McCambridge*, 130 id. 367.

Misrecital of the name of the judgment plaintiff is fatal to a deed. *Johnson* v. *Adleman*, 35 Ill. 265.

The objections to the transcripts on the ground that the copies of the executions set forth therein did not contain the name of the execution plaintiff was an irregularity, and

the following authorities hold it to render the transcript void: 8 Ency. of Pl. & Pr. 412, 413; *Brown* v. *Duncan,* 132 Ill. 413; *Cooper* v. *Jacobs,* 82 Ala. 411; Freeman on Executions, sec. 42.

Mr. JUSTICE FARMER delivered the opinion of the court:

The proof failed to establish the allegations of fraud and conspiracy to obtain title to the real estate and failed to establish that the justice of the peace was without jurisdiction to render the judgments complained of, and that complainant was ignorant of said suits, the judgments rendered therein and the executions issued upon said judgments. The court found in its decree that both of said judgments were rendered after due personal service of summons upon appellee; that after the return of executions upon said judgments unsatisfied, transcripts were issued by the justice of the peace and filed in the office of the clerk of the circuit court of Cook county; that executions were issued upon said transcripts to the sheriff of Cook county and were by him personally served upon appellee and demand made upon her for payment; that payment not being made, the executions were levied upon the premises described and they were sold by the sheriff to the appellant, O. E. Weber, for the sums alleged in the bill. The court found that the Montana street property was worth $3500 and was the homestead of the appellee; that the homestead was not set off to her prior to the levy and sale, but that appellant, Weber, offered at the trial to pay her the sum of $1000 for her homestead exemption; that the Ashland avenue property was worth $6000. The court further found and recited in the decree that the allegations and charges in the bill against defendants of fraud and conspiracy to procure title to the premises had not been proven; that appellant, Weber, at the time of the sales paid the sheriff the aggregate of his two bids, $409.58, and said sum was applied upon and satisfied the judgments upon which the exe-

cutions were issued. The court ordered that Weber have and recover of the complainant the sum of $409.58, with interest at five per cent from August 15, 1905, amounting to the sum of $462.48, and that execution issue therefor. The decree found that the transcripts issued by the justice of the peace were both defective and void, and by reason thereof all proceedings had upon said transcripts were invalid and void and the sales made under the executions issued thereon did not divest appellee of her title, and upon that ground it was ordered and decreed that said sales and deeds be set aside, canceled, vacated and annulled, and that appellant, Weber, be perpetually enjoined from asserting or claiming any rights in said premises under said sheriff's deeds. One-half the costs were ordered taxed to appellant, Weber, and the other one-half to appellee.

We are met at the threshold of this case with the objection that the relief granted by the decree was upon grounds not set out in the bill and was not warranted by the averments contained in said bill. There was a good deal of confusion in the docket entries, judgments and executions shown by the transcripts in spelling the names of defendants Wiedinger and Sundsten, especially the latter, but the court found in the decree that, however spelled, the name referred to the defendant Knut Sundsten. But there were more serious irregularities than these, which will be referred to hereafter. There is no allegation in the bill, however, referring to any irregularity in either of the transcripts. There is an averment that the transcript upon which execution was issued and the Ashland avenue property sold, recited a judgment in favor of Knut Semdsten and Barnard M. Wiedinger, doing business as Knut Semdsten & Co.; that the execution issued on said transcript was in favor of Knut Semdsten and Bernard M. Wiedinger, and the sheriff's deed recites a sale upon a judgment in favor of Knut Sundsen and Bernard M. Wiedinger. We do not think this a material irregularity, and it is the only

239—25

reference made in the bill to any irregularity in the transcripts or the proceedings thereunder.

It is apparent from reading the allegations of the bill that it was based upon the theory that the judgments before the justice of the peace were procured by fraud and that the justice had no jurisdiction of appellee. The chancellor so understood the bill and the proof offered, and counsel for the respective parties acted upon that theory at the hearing, which occurred July 3, 1907. This is apparent from a colloquy between court and counsel which took place at the conclusion of the testimony at that time. The chancellor took the case under advisement, after stating his impressions of the case made by appellee under the allegations of the bill. On the 10th of October, 1907, and before the decision was announced, the appellee, by leave of court, offered certain other evidence in an effort to show she was never indebted to Sundsten and Wiedinger, or either of them. At the conclusion of that testimony counsel for appellee then for the first time called the court's attention to certain irregularities in the transcripts, which had been introduced in evidence at the hearing on July 3. After this was done the chancellor inquired of counsel for defendants what he had to say upon that subject, and counsel answered that it was the first time any such question had been raised. The chancellor replied, "Yes, it was bran new to me." Counsel for defendants was then given until October 15 to meet the objections raised, and afterwards the decree was rendered.

The most serious irregularities pointed out were, that in one of the transcripts the suit was entitled "Knut Semdsten and Bernard M. Wiedinger, as Knut Semdsten & Co. *vs.* Helena B. Schmitt." The docket entries copied in the transcript recite: "Case called at 10 A. M. Plaintiff appears. * * * Witness sworn and examined, and from the evidence the court finds the issues for plaintiff. Whereupon it is considered by the court that said plaintiff have

and recover of the said defendant, H. B. Schmitt, the sum of $177.50 and costs of suit." There is also a recital that on oath of "Pltff." immediate execution was ordered and issued to B. M. Wiedinger. The copy of the execution in the transcript does not contain the name or names of the person or persons in whose favor the judgment was rendered. It orders the constable, out of the goods and chattels of appellee, to make the sum of $177.50 and interest, and $6.60 costs, "which lately recovered before me," etc. Who recovered the judgment is not anywhere mentioned in the execution. The copy of the execution in the other transcript contains the same defect. It nowhere states the name of the person in whose favor the judgment was rendered. The alleged irregularity referred to in the bill was not called to the court's attention. Defendants endeavored to supply the defects in the copies of the executions by the introduction of the original executions in evidence. These executions contained the names of the plaintiffs.

We are of opinion that the authority of the clerk of the circuit court to issue executions upon the transcripts depended upon said transcripts reciting such facts as gave him such authority, and if they did not do so, the defects and irregularities could not be supplied after execution had been issued, real estate levied upon and sold, the time for redemption expired and a deed executed to the purchaser. *Wooters* v. *Joseph,* 137 Ill. 113; *Hobson* v. *McCambridge,* 130 id. 367.

In our view of the case, however, it is unnecessary for us to determine whether the defects and irregularities in the transcripts were such as to invalidate the sales made under the executions issued thereon, as relief upon that ground was not justified under the allegations contained in the bill. Appellant disproved the case made by the bill, and if the evidence disclosed facts not relied upon in the bill, which would have entitled the appellee to relief, she should have amended her bill. "It is a fundamental rule of equity

pleading that the allegations of a bill, the proof and the decree must correspond, and that the decree cannot give relief that facts disclosed by the evidence would warrant where there are no averments in the bill to which the evidence can apply, and that if the evidence disproves the case made by the bill the complainant cannot be given a decree upon other grounds disclosed by the proofs unless the court permits the complainant to amend his bill so as to present the case disclosed by the evidence." (*Dorn* v. *Geuder*, 171 Ill. 362.) "A complainant must recover on the case made by his bill. He is not permitted to state one case in the bill and make out a different one in proof. The allegations and proof must correspond. The latter must support, and not be inconsistent with, the former. Although a good case may appear in the evidence, yet if it be variant from the one stated in the bill the bill will be dismissed." (*McKay* v. *Bissett*, 5 Gilm. 499.) "It is a well settled principle that the allegations and proofs must correspond, and that a party will not be entitled to relief, although the evidence may establish a clear case in his favor, unless there are averments in the bill to support the case made by the evidence." (*Morgan* v. *Smith*, 11 Ill. 194.) "He (the complainant) cannot allege one cause of relief against the purchaser and make out his case by proof of a different one." (*White* v. *Morrison*, 11 Ill. 361.) To the same effect are *Rowan* v. *Bowles*, 21 Ill. 17, *Vennum* v. *Vennum*, 61 id. 331, and numerous other cases that might be cited.

For the reason that the relief granted was not authorized under the allegations of the bill the decree of the superior court is reversed and the cause remanded. When the case is re-instated in the superior court appellee will have an opportunity to amend her bill if she so desires. If no amendment is made the superior court is directed to dismiss the bill.

*Reversed and remanded.*