ALLIED REALTY OF ST. PAUL, INC.,
Plaintiff,

v.

EXCHANGE NATIONAL BANK OF CHI-
CAGO et al., Defendants-Appellees,

Sidney P. Abramson, Intervenor-
Appellant.

EXCHANGE NATIONAL BANK OF CHI-
CAGO, Defendant-Appellant,

v.

ALLIED REALTY OF ST. PAUL, INC.,
Plaintiff,

Sidney P. Abramson, Intervenor-
Appellee.

Nos. 19311, 19321.

United States Court of Appeals
Eighth Circuit.

March 26, 1969.

---

Theodore J. Collins, of O'Connor, Collins & Abramson, St. Paul, Minn., for Sidney P. Abramson.

David C. Forsberg, of Briggs & Morgan, St. Paul, Minn., for Allied Realty of St. Paul.

Edgar Bernhard, of D'Ancona, Pflaum, Wyatt & Riskind, Chicago, Ill., for Exchange Nat. Bank of Chicago, Harold C. Evarts, of Best, Flanagan, Lewis, Simonet & Bellows, Minneapolis, Minn., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and BRIGHT, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is an appeal by intervenor Sidney P. Abramson from final order determining that Mr. Abramson is disqualified by reason of Canon 36 of the American Bar Association Canons of Professional Ethics from serving as an attorney for the plaintiff in Allied Realty of St. Paul v. The Exchange National Bank of Chicago, et al., pending in the trial court. Plaintiff has not appealed from the disqualification order. Defendants have cross-appealed from the refusal of the trial court to extend the disqualification order to enjoin the use by the plaintiff of information obtained and services performed by Mr. Abramson and the refusal to extend the disqualification to other attorneys representing the plaintiff.

The trial court in a memorandum opinion supporting its order, reported at 283 F.Supp. 464, fully and fairly states the issues, the pertinent facts and the basis of its decision. We affirm the trial court's decision both upon the appeal and the cross-appeal for the reasons hereinafter stated.

A brief summary of the extensive background facts appears to be necessary to put the issues before us in proper focus. Plaintiff Allied Realty brought this action to set aside as fraudulent a mortgage it had given to the defendant bank. Such action has been pending since 1965 and was commenced prior to Mr. Abramson's appointment as attorney for the plaintiff. Plaintiff is a wholly owned subsidiary of American Allied Insurance Company. In 1965 the Minnesota federal grand jury returned an indictment against numerous individuals including three former employees of defendant bank for alleged criminal activity which brought about the failure and insolvency of Allied Insurance Company. Upon change of venue, the indictment was prosecuted in North Dakota. After a trial of thirteen weeks, all defendants were acquitted. Abramson, who had previously served as assistant United States Attorney, accepted employment as a Special Assistant United States Attorney to assist in the preparation and trial of the criminal case and actively participated in the investigation and the trial. The trial court upon the basis of a transcript of a portion of the record of the criminal trial, which was introduced in evidence, found:

"These pages indicate that the government in the criminal trial attempted to show, through a series of exhibits, the mortgage transaction involving the Minnesota real estate, the subject of the present case. Neither the Receiver nor Abramson argue that this mortgage is not the same mortgage as the one involved in this case nor that such evidence was not adduced in the criminal trial. Abramson in fact reviewed many documents with officers of defendant Bank in preparation for trial, including the aforesaid mortgage documents.

"Abramson does not contend that he did not marshal the documents relevant to the Minnesota mortgage transaction. Indeed, his statement which is very frank that he saw every Bank

document put in evidence, coupled with the transcript showing Bank records being introduced, compels the conclusion that Abramson passed upon them with more than a mere summary perusal. Additionally, Abramson questioned Bank employees and participated in numerous pretrial procedures." 283 F.Supp. 464, 467.

As the trial court's opinion shows, Mr. Abramson was appointed as an additional attorney for the plaintiff with the approval of the state court administering the receivership largely on the basis of relevant knowledge he had acquired in the criminal case. He subsequently caused an amendment to the complaint to be filed which was stated to be based on information available from the criminal case previously unknown to the plaintiff.

The American Bar Association Code of Ethics has been adopted by the Supreme Court of Minnesota as a standard of professional conduct. Mr. Abramson spends considerable space in his brief to establish that he did not violate Canon 6 (conflicting interests) and Canon 37 (confidential information). There is no claim made in the present litigation that either of such canons was violated. Canon 36, the canon upon which the court based Mr. Abramson's disqualification, reads:

"A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon while in such office or employ."

■ The trial court in its opinion has clearly and convincingly demonstrated that Mr. Abramson's representation of the plaintiff in the present case is proscribed by Canon 36. Although Mr. Abramson's services as a government attorney had been completed and terminated prior to his employment as an additional attorney by plaintiff, he clearly falls in the category of having been in government employ and it is established

as determined by the trial court that while so employed, he investigated and passed upon matters involved in the present litigation.

Upon the facts before us, Hilo Metals Co. v. Learner Co., D.C. Hawaii, 258 F. Supp. 23, and opinions 135, 49, 37 and 26 of the American Bar Association Committee on Professional Ethics, all of which are quoted or referred to in the trial court's opinion, support the conclusion reached by the trial court that Canon 36 requires the disqualification of Mr. Abramson as an attorney for the plaintiff.

We agree with the statement of defendants' counsel, endorsed by the trial court, that the breach of Canon 36 was inadvertent. Such determination has no bearing upon the result. The trial court held:

"[T]he court believes that on a policy basis, it cannot make a subjective determination each time a similar situation arises and that in general a prohibition should visit ex-government attorneys who have been involved with particular matters and later contemplate private civil employment in the same matters." 283 F.Supp. 464, 469.

In United States v. Trafficante, 5 Cir., 328 F.2d 117, 120, the court in upholding a disqualification of an attorney who had been previously employed by the government, states:

"It is not necessary, in order that disqualification result from a prior employment, that it be shown that the attorney acquired knowledge while representing the prior client which could operate to his disadvantage in the subsequent adverse representation. 5 Am.Jur. 297–298, Attorneys at Law, § 66.

"The Preamble to the Canons of Ethics admonishes the members of the bar that their conduct should be such as to merit the approval of all good men. That conduct should not be weighed with hair-splitting nicety. We have found no exceptions to the exhortation to 'abstain from all ap-

pearance of evil.' 1 Thessalonians 5:22."

The court upon the record properly determined that Canon 36 disqualifies Mr. Abramson from representing the plaintiff in this case.

Upon cross-appeal, defendants urge the court erred in refusing their request to extend the order entered in the following respects: (1) To Abramson's agents, servants, employees and attorneys, and all persons in active concert or participating with him; (2) to the use, by others than Abramson, of evidence, knowledge or information examined or obtained by Abramson; (3) to the commencement of any action (except by Abramson) against the Bank based upon pleadings prepared by Abramson or based upon information and knowledge gained by Abramson in the course of his public employment; and (4) to the amended Complaint in this proceeding prepared and filed by Abramson, which the Bank asked to be expunged from the files.

 With respect to item (1), there is no evidence that any person acting for plaintiff is an agent, servant or employee of Mr. Abramson. Likewise, there is no proof that any other attorney representing the plaintiff in the case is a partner of Mr. Abramson's or that Mr. Abramson will directly or indirectly derive any financial benefit out of the fees paid by the plaintiff to any other person. As previously pointed out, this action was commenced prior to Mr. Abramson's appointment by other attorneys representing the plaintiff. We find nothing in the plain language of Canon 36 which would indicate that it is designed under ordinary circumstances such as here to reach beyond the attorney who previously held public office. The purpose of the Code of Ethics is to prescribe standards of conduct for attorneys. Such purpose with respect to Canon 36 is served by the disqualification of Mr. Abramson. The canon makes no provision either directly or by fair implication for abridging any right of the plaintiff or any other attor-

ney who does not share fees with the disqualified attorney. The Code of Ethics applies generally to attorneys, not to litigants. Absent a fee sharing arrangement with the former public official, neither the plain words nor the policy underlying the canon requires that unrelated attorneys be barred from their right to represent the plaintiff.

██ ██ With respect to item (2), the use of knowledge or information obtained by Mr. Abramson in his public official capacity, Canon 36 unlike Canons 6 and 37 contains no prohibition against disclosure of information obtained while a public servant. The canon on its face would not prohibit a former official from gratuitously passing on nonconfidential information which he obtained as a public official to an interested party. The purpose of the canon appears to be to prohibit an attorney from gaining financial advantage through the use of information which he obtained as a public official.

The record in the case before us shows that the information in controversy appears in the record of the criminal trial and that the information is not confidential. The United States Attorney filed an affidavit stating that he perceived no conflict of interest in the present situation and that the evidence used would be contained in the exhibits and the transcript of the criminal trial and in other public documents.

Defendants in their brief expressly disclaim any violation of Canons 6 and 37, which deal respectively with conflict of interest and disclosure of confidential information.

United States v. Mahaney, N.D. Cal., 27 F.Supp. 463, principally relied upon by the defendants in support of their cross-appeal, affords no support for defendants' position. That case involved an admitted violation of Canon 6 and the court found that confidential information obtained while in public employment was wrongfully disclosed.

 Our discussion of item (2) fully applies to items (3) and (4). No sound

basis exists for denying plaintiff the right to commence any appropriate action against the defendants which it chooses to bring and no reasonable basis exists for depriving the plaintiff of the benefit of any pleadings which Mr. Abramson may have prepared. The issue of Mr. Abramson's right to compensation for services performed before the disqualification order is not before us.

Defendants have wholly failed to establish that the trial court abused its discretion in refusing defendants the additional relief sought beyond the disqualification of Mr. Abramson as an attorney in the case.

The judgment is affirmed both on Mr. Abramson's appeal and defendants' cross-appeal.